UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

JOHN PHILLIP BROWN                                                                                    PLAINTIFF

V.                                                                           CIVIL ACTION NO.3:10-cv-268-CWR-FKB

COMMISSIONER OF                                                                                      DEFENDANT
SOCIAL SECURITY ADMINISTRATION

_____

REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE

This cause is before the undersigned United States Magistrate Judge for a report and recommendation regarding the appeal by John Phillip Brown of the Commissioner of Social Security's final decision that Brown has been disabled since August 5, 2006, but that Brown did not meet the insured status requirements of the Social Security Act on the date disability was established. (Document 8-2, p. 14).

In rendering this recommendation regarding Brown's appeal, the court has carefully reviewed the administrative record in this matter, including the administrative decision, the medical records and a transcript of the hearing before the Administrative Law Judge ("ALJ"), as well as Defendant's motion to affirm the decision of the Commissioner (Docket No. 13) and accompanying memorandum and Brown's response thereto (Docket 15).  For the reasons set out in this report and recommendation, the undersigned recommends that Defendant's motion to affirm the decision be denied and this case be remanded.

I.  FACTS AND PROCEDURAL HISTORY

In October, 2006, Brown applied for Disability Insurance Benefits and Supplemental Security Income (SSI) disability benefits. (Docket No. 8-5, p. 2; Docket No. 8-5, p. 6).  His applications listed his onset date as August 8, 2006.  *Id.* Brown's claim was initially denied and was denied upon reconsideration.  (Docket No. 8-5, p. 13).  Brown requested an administrative

hearing, which was held on April 7, 2009. Brown and his counsel appeared at the hearing and Brown testified, as did a vocational expert. (Docket No. 8-2, pp. 13-34). The ALJ found that Brown was disabled from August 5, 2006 forward, but that he was not eligible for benefits since he was not insured within the meaning of the Social Security Act on the onset date of August 5 2006, the date his attorney gave at the hearing as the onset date. Brown's insured status expired on December 31, 2004. (Docket No. 8-2, p. 14).

Brown's request for review was denied by the Appeals Council on September 2, 2009, and therefore the ALJ's decision became the final decision of the defendant. See 20 C.F.R.§ 404.981. On appeal, as addressed *infra*, Brown challenges only one aspect of the decision–the onset date utilized by the ALJ. Brown argues that his onset date was years earlier than 2006. (Docket No. 1).

## II. STANDARD OF REVIEW

The undersigned recognizes that this Court's review is limited to an inquiry into whether there is substantial evidence to support the Commissioner's findings, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971), and whether the correct legal standards were applied. 42 U.S.C. § 405(g); Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). The Fifth Circuit has defined the "substantial evidence" standard as follows:

> [s]ubstantial evidence means more than a scintilla, less than a preponderance, and is:
>
> such relevant evidence as a reasonable mind might accept to support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but "no substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence."

Abshire v. Bowen, 848 F.2d 638, 640 (5th Cir. 1988 )(quoting Hames v. Heckler, 707 F.2d 162,

164 (5th Cir. 1983)(citations omitted)).

In applying the substantial evidence standard, the court must carefully examine the entire record but must refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995). Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve. Martinez v. Chater, 64 F.3d 172, 174 (5th Cir. 1995). Hence, if the Commissioner's decision is supported by the evidence, and the proper legal standards were applied, the decision is conclusive and must be upheld by this court. Paul v. Shalala, 29 F.3d 208, 210 (5th Cir. 1994), overruled on other grounds, Sims v. Apfel, 530 U.S. 103, 120 S. Ct. 2080, 147 L. Ed. 2d 80 (2000).

### III.  THE ONSET ISSUE

The ALJ noted that Brown has severe impairments of seizures, hypertension, diabetes mellitus, anxiety, depression, and obesity. (Docket No. 8-2, p. 14). Various onset dates appear in the record. As noted, Brown alleged August 6, 2006 as the onset date in his applications. After receipt of the initial denial, Brown re-filed, claiming an onset date of December 1, 2004. (Document 8-4, p. 21). The contact report dated November 8, 2008, states: "During initial interview claimant alleged that he had not worked in any past years because he chose not to work. He has since changed his story alleging he had a seizure in the late 80s that led to his inability to work now." (Docket No. 8-4, p. 21). A VA examination dated December 6, 2002 (Docket No. 11-2, p. 1), and presented to the court, though not to the ALJ, indicates that Brown was at that time given a ten percent disability rating for VA purposes, based on scars from wounds he received in Vietnam in 1968, for which Brown had previously received a 0% rating. (Docket No. 11-2, p. 1). Brown also submitted to the court, though not to the ALJ, a VA report with a rating decision dated November 3, 2010, well after the hearing, indicating that though

3

Brown's prior claim for post traumatic stress disorder was rejected, he would receive, as of May 12, 2010, a thirty percent disability rating for post traumatic stress disorder.  (Docket No. 11-4, p. 3).

During the hearing, when asked why he stopped working in 1999, the claimant testified that he had a seizure around that time and that it was difficult to get hired once he had suffered a seizure.  (Docket No. 8-2, p. 24).  Brown went on to testify, however, that he takes seizure medication and had not had a seizure in approximately seven years, *id.*, which would have been around 2002.  Brown testified that he was diagnosed with diabetes nearly four years before the April 2009 hearing.  *Id.*  Brown also noted that he might have "PTSD" and was on medication for depression.  *Id.*  In the medical records provided during the administrative process, Brown gave varying dates for his last seizure, as well as varying reasons for not working and different dates for his last work.

On February 24, 2009, Brown told Dr. Andrew Yates that his last seizure was five or six years earlier, (Docket No. 8-8, p. 12), but said when admitted to River Region for diabetes on August 5, 2006, that he had not had a seizure in five years.  (Docket No. 8-7, p.3).  Brown told Dr. J. Morris Alexander, on March 7, 2009, that he stopped work in 1999 because of fatigue.  (Docket No. 8-8, p.3 ).  There is one medical record, again, not presented to the ALJ but presented to the court, indicating Brown stopped work in 2003 (Docket No. 11-4, p. 2).  In the record, there are medical reports indicating that Brown told medical providers he stopped work as early as 1994 because of the seizures.  (Docket No. 8-7, p. 20*).*  On September 11, 2006, Brown told a medical provider that he had not had a seizure in eight or nine years.  (Docket No. 8-7, p. 23) and on January 30, 2009, Brown told a provider that he had not had a seizure in five years.  (Docket No. 8-7, p. 98).

At the hearing, the ALJ noted that while he had determined that the claimant was disabled, he had a problem with the onset date since there were no medical records dated prior to August 5, 2006. (Docket No. 8-2, p.33). At that point, the claimant's attorney, with the claimant present, moved to amend the onset date from December 1, 2004, as asserted by Brown in his first request for reconsideration, to August 5, 2006. *Id.*

## IV. DISCUSSION OF APPLICABLE LAW

In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether "(1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work;[1] and (5) the impairment prevents the claimant from doing any other substantial gainful activity." Audler v. Astrue, 501 F.3d 446, 447-48 (5th Cir.2007) (citing Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir.1987)). If, at any step, the claimant is determined to be disabled or not disabled, the inquiry ends. Id. at 448 (citing Lovelace, 813 F.2d at 58). The burden of establishing disability rests with the claimant for the first four steps and then shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant is able to perform. Bowen v. Yuckert, 482 U.S. 137, 163 n. 5 (1987).

With respect to onset date, Social Security Ruling 83-20, provides the following instruction.

> **POLICY STATEMENT:** The onset date of disability is the first day an individual is disabled as defined in the Act and the regulations.

---

[1] If the Commissioner's analysis proceeds to step four, as it did in the case *sub judice*, the ALJ must determine the claimant's "residual functional capacity" (RFC) which is defined as "the most you can still do despite your limitations." 20 C.F.R. § 416.945(a)(1).

> Factors relevant to the determination of disability onset include the individual's allegation, the work history, and the medical evidence. These factors are often evaluated together to arrive at the onset date. However, the individual's allegation or the date of work stoppage is significant in determining onset only if it is consistent with the severity of the condition(s) shown by the medical evidence.
> ....
> *Onset in Disabilities of Nontraumatic Origin*
>
> In disabilities of nontraumatic origin, the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity. The weight to be given any of the relevant evidence depends on the individual case.
>
>> 1. Applicant Allegations
>> The starting point in determining the date of onset of disability is the individual's statement as to when disability began. This is found on the disability application and on the Form SSA-3368-F8/3820-F6 (Disability Report). A change in the alleged onset date may be provided in a Form SSA-5002 (Report of Contact), a letter, another document, or the claimant's testimony at a hearing.
>>
>> 2. Work History
>> The day the impairment caused the individual to stop work is frequently of great significance in selecting the proper onset date. The district office (DO) has the responsibility for documenting the claim (via Form SSA-821-F4 (Work Activity Report -- Employee) or Form SSA-820-F4 (Work Activity Report-- Self-Employed Person)) concerning pertinent work activity by the claimant before or after the alleged onset date. (This information may also be needed to determine whether insured status is met or when it is first or last met.)
>>
>> 3. Medical and Other Evidence
>> Medical reports containing descriptions of examinations or treatment of the individual are basic to the determination of the onset of disability. The medical evidence serves as the primary element in the onset determination. Reports from all medical sources (e.g., physicians, hospitals, and government agencies) which bear upon the onset date should be obtained to assist in determining when the impairment(s) became disabling. With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper

> onset date is particularly difficult, when for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.
>
> Particularly in the case of slowly progressive impairments, it is not necessary for an impairment to have reached listing severity (i.e., be decided on medical grounds alone) before onset can be established. In such cases, consideration of vocational factors can contribute to the determination of when the disability began (see example under heading, "Precise Evidence Not Available -- Need for Inferences").

In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available. When the medical or work evidence is not consistent with the allegation, additional development may be needed to reconcile the discrepancy. However, the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record.

*Precise Evidence Not Available -- Need for Inferences*

In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

If reasonable inferences about the progression of the impairment cannot be made on the basis of the evidence in file and additional relevant medical evidence is not available, it may be necessary to explore other sources of documentation. Information may be obtained from family members, friends, and former employers to ascertain why medical evidence is not available for the pertinent period and to furnish additional evidence regarding the course of the individual's condition. However, before contacting these people the claimant's permission must be obtained. The impact of lay evidence on the decision of onset will be limited to the degree it is not contrary to the medical evidence of record.

> (In mental impairment cases, see SSR 83-15, PPS-96, Titles II and XVI, Evaluation of Chronic Mental Impairments.)
>
> The available medical evidence should be considered in view of the nature of the impairment (i.e., what medical presumptions can reasonably be made about the course of the condition). The onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in SGA (or gainful activity) for a continuous period of at least 12 months or result in death. Convincing rationale must be given for the date selected.

The only discussion or analysis of the onset date in the present case was the ALJ's statement that there were no medical records presented which pre-dated August 5, 2006, followed by Brown's attorney's motion to amend. In his subsequent decision, the ALJ did not analyze onset date in accordance with SSR 83-20, but merely accepted Brown's counsel's motion to change it. However, Brown had already at that point asserted an earlier onset date, he had not worked for years before August 5, 2006 and the medical records even after August 5, 2006 indicated a long history of seizures, albeit self reported.

The Fifth Circuit noted that a "correct determination of the onset date of a disability is critical" and addressed the care that must be taken in making that determination in Spellman v. Shalala, 1 F.3d 357, 362 (5th Cir. 1993). "[I]n cases involving slowly progressive impairments, when the medical evidence regarding the onset date of a disability is ambiguous and the Secretary must infer the onset date, SSR 83-20 requires that that inference be based on an informed judgment." Id. at 362. A slowly progressive mental impairment appears to be an issue in this case as well. Id. at 362-63. The Spellman Court held that the Secretary cannot make such an inference without the assistance of a medical advisor in cases such as the instant one in which the onset date is not clear from the medical records provided. Id. Moreover, Spellman specifically addressed using a lack of medical records before a certain date as an onset date and held that "lack of evidence alone is not sufficient to support a finding that an impairment did not

exist at a disabling level of severity." Id. at 363.

Based on the foregoing, the undersigned recommends denying Defendant's motion to affirm and remanding this case for a determination of the onset date after consultation with a medical advisor or medical advisors and otherwise complying with the directive of SSR 83-20.

## V. CONCLUSION

For the above reasons, the undersigned recommends that Defendant's motion to affirm be denied and that this matter be remanded for a determination of onset date after consultation with a medical advisor or advisors and otherwise complying with the directive of SSR 83-20.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. §636; Fed. R. Civ. P. 72(b)(as amended, effective December 1, 2009); Douglass v. United Services Automobile Association, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 14th day of September, 2011.

        s/F. Keith Ball_____
        UNITED STATES MAGISTRATE JUDGE